The Honorable_____

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

| | | |
|---|---|---|
| SAMUEL LEVINE, | ) | |
| Plaintiff, | ) | No.  16-1284 |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| CITY OF SEATTLE, Assistant Chief Steve Wilske, John Doe 1, Jane Doe 1, | ) | **JURY DEMAND** |
| | ) | |
| Defendants. | ) | |

10

11

12

13

14

15

16

17

18

19

20

21

**POLICE GRENADE INJURES JOURNALIST**

22

     1.     Journalist and Plaintiff Sam Levine reported on the May 1, 2016,

23

demonstration in downtown Seattle. While reporting, he was injured by a grenade.

24

That grenade was thrown by a Seattle police officer. The grenade's shrapnel pierced

25

Levine's cheek and lodged in his face.

26

COMPLAINT – Page 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



COMPLAINT – Page 2

2.      Everything here is on video. The question is: may the police use force "reasonably expected to cause physical injury" against journalists and peaceful demonstrators because of the unrelated acts of a few lawbreakers?

3.      In 2016, as in previous years, the Seattle police decided to punish anyone and everyone for the acts of a handful of lawbreakers. Journalists, peaceful demonstrators, onlookers, and passers-by: all of these people, unconnected to any illegal act, were injured while the Seattle police fired grenade after grenade.

4.      There is a legitimate state interest in protecting property and officer safety, but Seattle's grenade attacks on journalists and others are not a proportionate, constitutional response to the provocations of a few.

5.      Over an hour after the May Day march began, a bit after 7:30 pm, police had formed a line and were forcing the protest down Fourth Avenue near the stadiums.

6.      Video shows that Levine, along with many other journalists, medics, and peaceful observers, was standing well back from the police line, filming the

COMPLAINT – Page 3

1  demonstration.[1] He was holding a camera, documenting the day's events.[2] He was

2  standing near the sidewalk; the six-lane road was closed to traffic.

3       7.     The video shows that a handful of demonstrators were less than 20 feet

4  from the police.[3] The vast majority of the crowd was well back from the police.

5       8.     A slow motion version of the video shows an officer tossing a grenade

6  through the air.[4] The grenade explodes twice: first, in mid-air, a small explosion ejects

7  the metal fuse. A second, larger explosion, fragments the grenade's case, sending

8  shrapnel into the air.

9       9.     Levine is seen going down as if it hit by a grenade.[5] He was, in fact, hit by

10  a grenade.

11      10.     On another video, we hear the explosion. Then we see Levine after he is

12  hit, lying on the ground bleeding.[6] He saw a "bright flash of light, my ears started

13  ringing, then the entire left side of my face went numb."[7] He can be heard asking "is

14  my face gone?"[8] A piece of shrapnel pierced Levine's cheek.[9]

15      11.     Video footage captured by Levine himself shows a grenade leave the

16  officer's hand in a high arc. The fuse goes off in mid-air, around the two-second mark.

17  The grenade then hits the ground, bounces toward Levine, and explodes. Levine spins

18  and hits the ground.[10]

19

20  _____

[1] https://youtu.be/4n6YclCP2NE?t=1m23s

21  [2] https://youtu.be/4n6YclCP2NE?t=2m44s

[3] https://youtu.be/4n6YclCP2NE?t=1m58s

22  [4] https://youtu.be/4n6YclCP2NE?t=2m21s

[5] https://youtu.be/4n6YclCP2NE?t=2m59s (Levine is in a white shirt and backpack, partially obscured by

23  graphics).

[6] https://youtu.be/r9wIGUtTiRY?t=11m

24  [7] http://komonews.com/news/local/man-injured-in-may-day-protest-i-saw-a-bright-flash-of-light-my-ears-started-

ringing

25  [8] https://youtu.be/r9wIGUtTiRY?t=11m10s

[9] *Id.*

26  [10] https://twitter.com/samlevine/status/727236619967692801

COMPLAINT – Page 4

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
TELEPHONE: (206) 769-1772

1   12. Levine is attended by medics as grenades continue to explode in the

2 background.[11]

3   13. Levine was taken to the hospital where the shrapnel was removed from

4 his face.

5   14. Combined Tactical Systems, CTS, is a company that manufactures the

6 grenades that Seattle uses at demonstrations.

7   15. When the shrapnel was removed from Levine's cheek, it had the letters

8 "CTS" on it.



9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

[11] https://youtu.be/SaylHnI2ZpI?t=3m41s

COMPLAINT – Page 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



COMPLAINT – Page 6

1   16.   Levine's cheek later required surgery. Despite this surgery, Levine will

2   never have the same smile he had before the grenade shrapnel ripped through his face.

3   He will never have full facial symmetry. He will always have a scar.



22   17.   Although many people had complained about grenade injuries in 2015,

23   Seattle failed to change its policies and practices on deployment of the grenades.

24   18.   Although many people had complained about grenade injuries in 2015,

25   on April 29 and on April 30, 2016, Seattle denied that the grenades could cause injury.

26

COMPLAINT – Page 7

1      19.     Although a Seattle police officer went to the hospital with burns caused

2 by a grenade on May Day 2015, on April 29 and on April 30, 2016, Seattle denied that

3 the grenades could cause injury.

4      20.     Levine was not arrested for his actions on May Day.

5      21.     Levine was violating no law at the time he was hit by the grenade.

6      22.     Levine was violating no lawful order at the time he was hit by a grenade.

7      23.     Since Levine was not engaged in illegal actions, no use of force was

8 justified, much less the degree of force used.

9      24.     Since Levine was a journalist violating no law, no use of force was

10 justified, much less the degree of force used.

11      25.     This action seeks compensation for physical injuries, pain and suffering,

12 as well as the harm of suppressing Levine's right to engage in First Amendment

13 activities.

14      26.     This action also seeks an injunction requiring the Seattle Police

15 Department to plan for protests and train officers in a way that minimizes violence

16 against those engaging in and reporting on political speech, and seeks the removal of

17 incendiary devices from the standard weapons the Seattle police use, because

18 demonstrations are overwhelmingly made up of non-violent marchers, observers, and

19 journalists.

20      27.     Finally, this action seeks punitive damages against the individual officers

21 so that they will never again use violence against peaceful reporters.

22

23                             **JURISDICTION AND VENUE**

24      28.     This Court has original jurisdiction under 28 U.S.C. § 1331 (federal

25 question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction over state law

26 claims).

COMPLAINT – Page 8

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

29.     Venue is appropriate under 28 U.S.C. § 1391(b), because Defendants reside in this District and because all of the events and omissions giving rise to the claims occurred in this District. The Seattle Division is the proper forum because the events took place in King County, Washington.

## PARTIES

30.     Plaintiff Samuel Levine is a resident of Seattle, King County, Washington.

31.     Defendant City of Seattle is a city under Washington law.

32.     Assistant Police Chief Steve Wilske is a Seattle police officer and the officer in charge of planning the police force's actions on May Day. Wilske commanded, authorized, encouraged, tolerated, and/or ratified the use of excessive force and suppression of speech by officers. He is sued personally and in his official capacity.

33.     Defendant John Doe 1 is a Seattle Police Officer who was on duty at the May Day demonstration on the evening of May 1, 2016. John Doe 1 threw a grenade that injured Levine, inflicted pain, and prevented Levine from engaging in First Amendment Activity. He is pictured in numerous videos. He is sued personally.

34.     Defendant Jane Doe 1 is a Seattle Police Officer who was on duty at the May Day demonstration on the evening of May 1, 2016. Jane Doe 1 instructed John Doe 1 to throw the grenade that injured Levine, inflicted pain, and prevented Levine from engaging in First Amendment activity. Jane Doe 1 further failed to intervene to stop John Doe 1's excessive use of force.

## THE WEAPON, THE MARCH, AND THE INJURY

35.     Seattle and the individual defendants were on notice that the grenades they deploy at protests can cause significant harm.

COMPLAINT – Page 9

**The grenades are designed to, and known to, cause injuries**

36.     In its catalog, CTS, the manufacturer of the grenades, informs its customers that the grenades are Level 5 force. The scale is 1-6, with 6 being deadly force, and pepper spray being Level 3 force.[12]

37.     A research paper quoted the manufacturer as estimating that the grenades generate heat of up to 2700 degrees Fahrenheit and sound from 165-180 dB.[13]

38.     According to the Seattle Police Department, what people fear on the most basic level is thunder and lightning. The Seattle Police Department describes the grenades as "thunder and lightning in the palm of your hand." It is a weapon designed to terrorize individuals into compliance.[14]

39.     In the same video,[15] the Seattle Police Department admits grenades are not to be thrown into crowds, but to the side of a crowd to move people in a direction, to "herd them into escape routes." Defendants, however, implemented a plan on May Day to throw grenades indiscriminately into crowds. Defendants also implemented a plan to target grenades as weapons against journalists.

40.     The grenades work much like military grenades. The grenades have a pull ring. Pulling on the pull ring releases the safety pin. When deployed, a lever releases, priming the grenade to explode. In the grenades here, there are two explosions. A small explosion ejects the metal pin assembly. Shortly after, a second explosion

---

[12] https://www.combinedsystems.com/userfiles/pdfs/Missions_Brochure.pdf at 3, 11.

[13] A December 2012 article "Evaluation of Rubber Ball Grenades: Applications for Law Enforcement and Corrections" Charlie Mesloh, et al. (published for a "Law Enforcement Executive Forum - 2012) studied the CTS grenades (model 9590) and note: "According to Combined Tactical Systems (2009), these devices generate three primary effects: heat (2700° F), light (6-8 million c.d.), and sound (165-180 dB)." (http://www.academia.edu/2108148/Stingball_Grenade_Evaluation

[14] http://blutube.policeone.com/videos/935703812001-blast-ball-lesslethal-crowd-control/ (at 4:20).

[15] http://blutube.policeone.com/videos/935703812001-blast-ball-lesslethal-crowd-control/

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
TELEPHONE: (206) 769-1772

1    fragments the rubber body. Some grenades contain a chemical irritant, such as OC or

2    pepper spray, which is released with the second explosion.

3          41.    Seattle's use of grenades makes little sense. Seattle will claim that the

4    grenades force protestors away so that they cannot throw objects at officers. But that

5    simply creates a throwing contest: can the protestors throw objects 40 yards, about the

6    distance from third to first base? If so, officers would need to throw the grenades at

7    least that far to create a safety zone. But officers have less and less control over the

8    explosion the further away it occurs. Using the grenades to create a buffer zone of more

9    than a couple of yards necessarily creates an unreasonable chance of injuries to citizens

10   and journalists.

11         42.    At closer distances, pepper spray can be deployed at specific targets,

12   minimizing harm to journalists and nonviolent participants.[16]

13         43.    The police received several complaints about injuries from grenades at

14   the May Day 2015 demonstration.[17]

15         44.    Members of Seattle's City Council were extremely critical of these

16   grenade deployments.[18]

17         45.    The complaints from citizens, including documentation of an injury to a

18   journalist from the *Seattle Weekly*, led to an investigation by Seattle's Office of Police

19   Accountability.[19]

20         46.    OPA found that blast ball grenades "exploded in extremely close

21   proximity to people, not all of whom were engaged in destruction of property or posed

22   a threat to public safety."[20]

23   _____

24   [16] http://blutube.policeone.com/videos/935703812001-blast-ball-lesslethal-crowd-control/ (stating that the
     grenades should be used when chemical sprays are not effective).

25   [17] http://www.seattle.gov/Documents/Departments/OPA/ClosedCaseSummaries/2015-0643ccs12-08-15ma.pdf
     [18] http://www.seattletimes.com/seattle-news/crime/harrell-idiotic-arrest-caused-melee-at-may-day-protest/

26   [19] http://www.seattle.gov/Documents/Departments/OPA/ClosedCaseSummaries/2015-0643ccs12-08-15ma.pdf
     [20] *Id.* at 6.

COMPLAINT – Page 11

1    47.    Paige Cornwell of the *Seattle Times* was hit by a grenade on video in

2    2015.[21]

3    48.    Cornwell confirmed the injury on Twitter.[22]

4    49.    Seattle's Chief of Police has steadfastly supported the use of the grenades

5    against lawful protestors.

6    50.    After the 2015 May Day demonstration, Chief O'Toole professed to be

7    shocked—not by police violence against peaceful protesters, but by criticism of that

8    police violence by City Council members, the press, and citizens.[23]

9    51.    After reviewing the Force Review Board and Office of Police

10    Accountability reports on the use of blast ball grenades at May Day 2015, Seattle and

11    Chief O'Toole continued to support their deployment.[24]

12    **The 2016 anti-capitalist May Day demonstration**

13    52.    There are many demonstrations on May Day in Seattle. In this

14    Complaint, May Day, demonstration, and protest refer to the anti-capitalist march on

15    May 1, 2016.

16    53.    The demonstration began around 6 pm at Westlake Center. There were

17    perhaps 200 demonstrators at Westlake park, and possibly 400 police officers.

18    54.    The police immediately "kettled"[25] the march, not allowing it to move

19    except in strictly controlled directions completely surrounded by police.[26]

---

20    [21] http://www.thestranger.com/blogs/slog/2015/05/04/22163943/video-seattle-police-burn-seattle-times-reporters-foot-with-a-flashbang-grenade

21    [22] https://twitter.com/pgcornwell/status/594337761315827712

22    [23] http://spdblotter.seattle.gov/2015/05/06/chief-otoole-shocked-and-disappointed-by-councilmember-harrells-statements-all-force-remains-under-review/*See also*

23    http://www.king5.com/story/news/local/seattle/2015/05/01/may-day-friday-coverage/26724049/ (O'Toole stating that officers were "very professional" in how they handled May Day.

24    [24] Letter from O'Toole to Pierce Murphy at OPA, January 8, 2016 at 2.

25    [25] https://en.wikipedia.org/wiki/Kettling

26    [26] http://www.king5.com/news/local/seattle/my-first-seattle-may-day/164796969("Police dictated where the protestors marched. From the get-go, police blocked off the road up to Capitol Hill. The protestors felt they were being herded like cattle, eventually being funneled to the commercial district of SoDo.").

COMPLAINT – Page 12

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

55.     The march proceeded toward Belltown, and eventually the police pushed the march south on Second Avenue, which had been closed to traffic.

56.     As is true every year, a small number of individuals in the crowd committed illegal acts. This included writing on a car with Sharpie, lighting fireworks, and other crimes against property.

57.     More seriously, at a couple of points during the march, but prior to Levine's injury, a few people in the crowd threw rocks, bottles, and other objects at officers.

58.     In one sad incident on Second Avenue, a rock hit a police officer on the face, causing a serious injury.

59.     After this injury to the officer, the police lost their patience and control.

60.     Every year, there are acts of property destruction and aggression toward police. Both are designed to provoke police into an overreaction.

61.     Every year, Seattle police overreact to the acts of a few individuals.

62.     Every year, a march that might pass unnoticed becomes international news because Seattle police fall into the same trap.

63.     In 2016, on Second Avenue, the police began their annual ritual of collective revenge, creating the images of police violence that define Seattle's May Day.

64.     Rather than arrest wrongdoers, Seattle acts to collectively punish all people involved in the demonstration.

65.     The demonstrators on Second Avenue were outnumbered by police officers, and that remained true as the demonstration continued down Fourth Avenue.

66.     The demonstrators were also completely contained by the police presence.

67.     Anyone who wished to leave the demonstration had difficulty doing so, as the police were not allowing people through their lines.

COMPLAINT – Page 13

1    68.    Although the demonstration was contained, the police used pepper spray

2  and grenades.

3    69.    Starting around Second Avenue and Cherry Street, video shows the

4  demonstration, including numerous journalists and observers, moving in the direction

5  ordered by the police, but officers are throwing grenade after grenade into the crowd.

6  For instance, around Second and Yesler, one video has an officer on the sidewalk

7  yelling for protestors to "go home, get out of here," although the grenades are

8  exploding ahead and at the side of the protestors, who are boxed in from behind by the

9  officers and on the other side by a building.[27]

10    70.    After passing Yesler, the police forced the march down Fourth Avenue by

11  the stadiums.

12    71.    Around Seattle Boulevard South, one or two bottles were thrown at the

13  police. They appear to have contained a flammable liquid, although thankfully neither

14  exploded — until the police mistakenly lit one of the bottles on fire with a grenade.[28]

15  The injury to the officer that occurred when the police grenade started a fire is the only

16  injury associated with the bottles.

17    72.    The broken bottle can be seen at 1:48 of this video.[29]

18    73.    At 1:58, the person closest to the camera, and closest to the police line, is

19  journalist Casey Jaywork from the *Seattle Weekly*.[30]

20    74.    By the time the grenade is fired at Levine, the crowd has moved well

21  away. There is no threat to the police. And still, a grenade was thrown.[31]

22

23  ────────────────

24  [27] https://www.facebook.com/KING5Photojournalists/videos/1045598392181530/
   [28] http://www.seattleweekly.com/news/video-suggests-police-not-protesters-ignited-liquid-that-burned-officer-
25  during-may-day-protest/
   [29] https://youtu.be/4n6YclCP2NE?t=1m48s
26  [30] https://youtu.be/4n6YclCP2NE?t=1m58s
   [31] https://youtu.be/4n6YclCP2NE?t=2m15s

COMPLAINT – Page 14

1    75.    Around this time, an officer at some distance from where the bottles

2    broke threw the grenade that injured Levine.

3    76.    The grenade's flight is well-documented, and it appears to be thrown

4    directly at Levine.

5    77.    The video of the grenade exploding and harming Levine shows the

6    distance between Levine and the police. Demonstrators and journalists can be seen to

7    be at least 20 feet from the police line.[32]

8    78.    After the grenade explodes, Levine falls to the ground. Covered in blood,

9    he is rushed to the hospital.

10    79.    At the hospital, a doctor told him that he was lucky that the shrapnel

11    avoided his neck, because that could have killed him.

12    80.    When Chief O'Toole was the head of the Boston police, a journalism

13    student died when she was hit in the eye by a less-lethal projectile.[33]

14    81.    The shrapnel removed from Levine's face was a little more than 1 inch

15    long and had the letters "CTS" written on it.

16    82.    After having the shrapnel removed, the swelling went down and Levine

17    took a course of antibiotics. He had a headache for a couple of days.

18    83.    Shortly after being injured, Levine did two interviews about his injury.

19    The first was interview was aired on KOMO, a local television station. During this

20    interview, Levine describes seeing a "bright flash of light, my ears started ringing, then

21    the entire left side of my face went numb."[34]

22    84.    Levine told another interviewer some of the reasons he was chronicling

23    the demonstration. Levine was trying to capture raw footage of the protest so that the

24    _____

25    [32] https://youtu.be/4n6YclCP2NE?
     [33] https://en.wikipedia.org/wiki/Death_of_Victoria_Snelgrove

26    [34] http://komonews.com/news/local/man-injured-in-may-day-protest-i-saw-a-bright-flash-of-light-my-ears-started-ringing

COMPLAINT – Page 15

1    story of the demonstration would not be reduced to a simple narrative, regurgitated by

2    a handful of media outlets. Levine believed that multiple outlets are necessary to make

3    sure the truth comes out and the public receives the complex stories such as this one

4    with the nuance it deserves.

5        85.    Seattle's description of "Molotov Cocktails" at the demonstration

6    highlights the value of this kind of at-the-scene journalism. Seattle claimed that a

7    demonstrator burned an officer when a Molotov Cocktail was thrown at officers. The

8    truth is more complicated.

9        86.    Someone brought bottles full of a flammable liquid, possibly gasoline, to

10   the demonstration. The bottles were not lit when they were thrown.[35]

11       87.    Notwithstanding the seriousness of throwing a bottle, Seattle claimed

12   that officers were burned by the bottles; in reality, the liquid was set on fire by their

13   own grenade.[36]

14       88.    The grenade that exploded behind police lines started a fire. This fire

15   injured an officer. It was not a lit Molotov Cocktail that injured an officer, but the

16   police over-reaction. It was caused because the grenades can bounce backwards,

17   toward officers.

18       89.    In 2015, at least one officer was hurt when a grenade burned him. Rather

19   than accept that friendly fire burned Officer Corey Williams, Seattle tried to blame the

20   victim. Seattle argues that his injury was caused by his nylon socks.

21       90.    Seattle also ignored injuries in 2015 to *Seattle Times* reporter Paige

22   Cornwell,[37] and *Seattle Weekly* reporter Casey Jaywork.

23   _____

[35] A Molotov Cocktail is, by definition, lit before it is thrown.  To be effective, such a weapon must be lit when it hits the ground. https://en.wikipedia.org/wiki/Molotov_cocktail ("In action, the wick is lit and the bottle hurled at a target such as a vehicle or fortification.").

[36] http://www.seattleweekly.com/news/video-suggests-police-not-protesters-ignited-liquid-that-burned-officer-during-may-day-protest/; http://hjgale.tumblr.com/post/147149903814/facts-and-firebombs-how-incendiary-claims-and

[37] https://twitter.com/pgcornwell/status/594337761315827712

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
TELEPHONE: (206) 769-1772

1    91.    Seattle's failure to acknowledge grenade injuries to peaceful protestors

2    and journalists is one reason why demonstrations must be documented by multiple

3    journalists.

4    92.    As Levine told an interviewer after his injury, while the police have a

5    responsibility to prevent people from "burning down the city," the police response

6    need only be as serious as the threat they face. Every year on May Day, the police let

7    protestors goad them into a disproportionate response.

8    93.    Seattle is proud of this disproportionate response. Not only do the Mayor

9    and the Chief back up this chronic, systematic use of excessive force, Seattle holds itself

10   out as a national model for policing protests. Seattle invited representatives from

11   Cleveland to watch how it polices protests. Somehow, though, the Cleveland police,

12   facing thousands of protestors in a tense situation caused by recent deaths of officers

13   and political polarization,[38] managed to police the protests without resorting to using

14   grenades, focusing on the bike tactics that Seattle used in 2014, a year in which

15   grenades were not used at the May Day demonstration.[39]

16   94.    Instead of following Seattle's lead, Cleveland officers de-escalated the

17   situation at the Republican National Convention.

18   95.    On August 10, 2016, more than 40 filmmakers, including eight Oscar

19   winners, called on the Department of Justice to investigate the harassment and

20   targeting of citizen journalists who record episodes of police violence.[40]

21

22

23

24

25   [38] http://abcnews.go.com/Politics/largely-peaceful-protests-show-wide-swath-anger-cleveland/story?id=40674042
26   [39] http://www.huffingtonpost.com/entry/cleveland-rnc-protest-policing_us_578e71c9e4b0f180da632643
     [40] https://www.theguardian.com/film/2016/aug/10/filmmakers-citizen-journalists-justice-department-investigation

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
TELEPHONE: (206) 769-1772

## CAUSES OF ACTION

### COUNT 1: 42 U.S.C. § 1983

*(Against all Defendants for Violation of the First Amendment)*

96.     Defendants' actions in targeting, harming, and intimidating Levine infringe on his right to speak by discouraging him from reporting on demonstrations and by forcing him to stop filming the 2016 May Day demonstration. These actions were taken under color of law and without lawful justification.

97.     Levine was engaged in activity protected by the First Amendment.

98.     Levine was a non-violent journalist in a political protest. Levine was not resisting a lawful order.

99.     No use of force against Levine was justified.

100.     The police targeted Levine while he was engaged in protected activity and because he was engaged in protected activity. Police targeted him because he was filming police actions. By targeting him with a grenade, the defendants made it impossible for Levine to continue his First Amendment activities. Levine's injury forced him to cease reporting on the demonstration.

101.     All defendants either actively engaged in intimidating Levine and causing injury to Levine, knew of and approved of the actions of officers who intimidated and harmed Levine, knew of and failed to intervene to stop officers from intimidating and harming Levine, and/or took actions or omissions that led predictably to the intimidation of and injuries to Levine.

102.     Levine's injuries should be compensated in an amount determined by a jury. Punitive damages should be awarded against the individual defendants.

### COUNT 2: 42 U.S.C. § 1983

*(Against all Defendants for Violation of the Fourth and Fourteenth Amendments)*

COMPLAINT – Page 18

1    103.    Levine was a non-violent journalist covering a political protest. Levine
2    was not resisting a lawful order.

3    104.    No use of force against Levine was justified.

4    105.    Defendants' actions — intimidating, striking, and harming Levine with a
5    grenade — violated his right to be free of excessive force, unreasonable searches and
6    seizures, and his due process right to be free of punishment without process. These
7    actions were taken under color of law and without lawful justification.

8    106.    All defendants either actively engaged in intimidating Levine and causing
9    injury to Levine, knew of and approved of the actions of officers who intimidated and
10   harmed Levine, knew of and failed to intervene to stop officers from intimidating and
11   harming Levine, and/or took actions or omissions that led predictably to the
12   intimidation and injuries to Levine.

13   107.    Levine's injuries should be compensated in an amount determined by a
14   jury. Punitive damages should be awarded against the individual defendants.

15
16                        **COUNT 3: 42 U.S.C. § 1983**
17   *(Against the City of Seattle for a pattern and practice of excessive force, violating the*
18                        *Fourteenth Amendment)*

19   108.    By failing to properly train, supervise, or discipline officers, the City of
20   Seattle has a pattern and practice, or policy or custom, of using excessive force against
21   non-violent protesters, bystanders, and journalists.

22   109.    By commanding, authorizing, encouraging, tolerating, and/or ratifying
23   the use of excessive force by officers on May Day 2016, the City of Seattle engaged in a
24   pattern and practice of excessive force against non-violent protestors, bystanders, and
25   journalists.

26   110.    As a result, Levine has been permanently injured.

COMPLAINT – Page 19

111.   Levine's injuries should be compensated in an amount determined by a jury.

## COUNT 4: ASSAULT AND BATTERY

*(Against Defendant John Doe 1)*

112.   Defendant John Doe 1 made an intentional and unpermitted contact with Levine by deploying at grenade at him.

113.   Defendant John Doe 1 intended to hit Levine with the grenade or to make him fear that the grenade would hit him.

114.   A reasonable person would find being hit by grenade shrapnel to offend their safety and personal dignity.

115.   At no time did Levine consent to the actions of Defendant John Doe.

116.   As a result, Levine has been permanently injured.

117.   Levine's injuries should be compensated in an amount determined by a jury.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendant as follows:

    A.   Damages in an amount to be determined by jury;

    B.   Punitive damages in an amount to be determined by a jury;

    C.   A declaration that any use of force against journalists who are complying with police orders is excessive force;

    D.   A declaration that the police must face a credible threat to life safety to deploy grenades into a crowd consisting of mostly peaceful demonstrators, journalists, and others obeying all lawful orders;

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
TELEPHONE: (206) 769-1772

1        E.  A permanent injunction prohibiting Defendants from using excessive

2            force, including grenades, against journalists and others peacefully

3            participating in, supporting, or observing demonstrations;

4        F.  Costs of suit, including reasonable attorneys' fees, costs, and expenses

5            as provided by law; and

6        G.  Such other, further, and different relief as the nature of the case may

7            require or as may be determined to be just, equitable, and proper by

8            this Court.

9

10   DATED August 16, 2016.

11                     LAW OFFICE OF HARRY WILLIAMS LLC.

12                     By  s/ Harry Williams IV

13                         Harry Williams IV, WSBA #41020
                       harry@harrywilliamslaw.com.

14                          707 East Harrison
                       Seattle, WA 98102

15                          Telephone:  206.769.1772

16                     ***Attorney for Plaintiff***

17

18

19

20

21

22

23

24

25

26

COMPLAINT – Page 21